UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION
IN ADMIRALTY

| | | |
|---|---|---|
| Stephen D. Mann | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No.: 9:24-cv-00885-DCN |
| | ) | |
| S/V MIDNIGHT (O.N. 1050428), her engines, boilers, tackle, appurtenances, etc., *in rem*, and South By Southeast, LLC, *in personam*, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | (NON-JURY) |

## PLAINTIFF'S VERIFIED COMPLAINT

COMES NOW Captain Stephen D. Mann ("Capt. Mann"), Plaintiff in the above-captioned action, and complaining of Defendants S/V MIDNIGHT (O.N. 1050428) ("Vessel") and South By Southeast, LLC (collectively "Defendants"), shows this Honorable Court as follows:

### JURISDICTION

1. This case involves the nonpayment of seamen's wages arising out of seaman's work related to the preparation and subsequent safe delivery of the Vessel on an intercoastal voyage from San Diego, California to Savannah, Georgia in 2023.

2. This is an admiralty case and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. Plaintiff invokes the original admiralty subject matter jurisdiction of this Honorable Court pursuant to 28 U.S.C. § 1333(1).

3. This case is governed by the Commercial Instruments and Maritime Lien Act ("CIMLA"), 46 U.S.C. §§ 31301 et seq.; the Seaman's Wages Act, 46 U.S.C. §§ 10501,

1

et seq.; 46 U.S.C. §§ 11101, et seq.; related federal statutes; the General Maritime Law of the United States; and the laws supplemental thereto and amendatory thereof.

4. Capt. Mann is a resident of California and conducts business as "Capt. Mann's Yacht Services" out of San Diego, California. Capt. Mann also employs his spouse and two children as his crewmembers.

5. Capt. Mann and his crew members are/were at all times material "seamen" performing seaman's work within the meaning of applicable federal statutes related to seaman's wages.

6. Defendant S/V MIDNIGHT (O.N. 1050428), (formerly S/V ODYSSEY), is a sailing vessel that is approximately 95 feet in overall length, 73 gross tons, built in 1986 by Maxi Yacht International, and owned by Defendant South By Southeast, LLC ("SBS").

7. Defendant SBS is a limited liability company organized under and existing by virtue of the laws of the State of South Carolina and, upon information and belief, maintains its principal place of business in Beaufort, South Carolina. SBS is subject to both the general personal jurisdiction and specific jurisdiction of this Honorable Court.

FACTS

8. Upon information and belief, Dale Thompson owns a controlling interest in Defendant SBS.

9. Upon information and belief, in 2022, SBS purchased the Vessel, which was, at that time, located at Driscoll Mission Bay Boatyard and Marina ("DMB") in San Diego, California.

10. The Vessel remained at DMB to undergo an extensive refit to convert the Vessel into a commercial office for Dale Thompson and in preparation for the upcoming

2

intercoastal voyage.

11. On or about March 4, 2022, Dale Thompson and Capt. Mann met at the Vessel closing which was held offshore in international waters.

12. Capt. Mann served as the Vessel master for this excursion.

13. On or about June 20, 2022, Dale Thompson and his wife Luna Thompson contacted Capt. Mann by video call regarding his employment, and that of three additional crewmembers with the necessary maritime experience, aboard the Vessel to oversee the remaining preparations and to deliver the Vessel to Savannah before the full onset of the 2023 hurricane season.

14. At the time of his meeting with SBS, Capt. Mann had over 30 years of maritime and sailing experience and has extensive related experience in the areas of electrical, mechanical, diesel, gasoline, hydraulic, pneumatic, and structural shipboard systems. Capt. Mann was also a fluent Spanish-speaker, which was a valuable asset for coordinating with Spanish-speaking workers at the DMB Boatyard and with foreign officials throughout the voyage.

15. Based upon these qualifications and experience, SBS agreed to pay wages for Capt. Mann and three crewmembers at a total rate of $1,500 per day for the intercoastal voyage.

16. After meeting with Capt. Mann, SBS employed Capt. Mann and three crewmembers to oversee and coordinate the remaining voyage preparations on the Vessel for delivery to Savannah.

17. SBS, as owner of the Vessel, failed to obtain signed, written shipping articles for Capt. Mann and the crew for the subject intercoastal voyage.

3

18. Beginning May 1, 2023, Capt. Mann and his crew were working on the Vessel for a total of $1,500.00 in wages per day. Capt. Mann eventually billed the pre-voyage wages to Defendant at a discounted rate of $500 per day.

19. The discounted rate included a reduction from 31 to 30 days at the lower rate and was predicated upon the payment of all wages promptly upon completion of the intercoastal voyage.

20. Capt. Mann offered the conditional discounted rate as motivation for prompt payment and because he was under the impression that a good-faith relationship had been formed with the Thompsons.

21. In June 2023, Capt. Mann billed crew wages at $1,500.00 per day, which included his wages and the wages of three of his crewmembers, and continued through the completion of the voyage on July 26, 2023.

22. On June 14, 2023, the Thompsons arrived and boarded the Vessel in preparation for departure the following day.

23. The voyage to Savannah began on June 15, 2023, but issues with the Vessel's battery chargers were discovered.

24. On June 16, 2023, after the repair of the Vessel's battery chargers, the Vessel departed DMB and stopped at an anchorage in San Diego Bay.

25. On June 17, 2023, the Vessel departed from San Diego Bay.

26. That same day, the Vessel sustained a catastrophic hydraulic failure in the steering cylinder causing a return to shore where Dale and Luna Thompson departed the Vessel and returned to the East Coast.

27. Approximately 48 hours after the failure, Capt. Mann had facilitated full repair of the

4

Vessel and was ready to continue the voyage.

28. However, the Thompsons informed Capt. Mann that they were unable to return but would rendezvous with the Vessel later.

29. Because the Thompsons would not be aboard for a substantial portion of the trip, Capt. Mann had to hire, *sine mora*, one additional crewmember in order to have a sufficient crew complement for the intercoastal voyage.

30. On June 20, 2023, Capt. Mann procured, with Defendants consent, the fourth crewmember Timothy McCarthy at a rate of $250 per day.

31. That same day, Capt. Mann and now four crewmembers continued the voyage enroute for Savannah.

32. The voyage was a Herculean endeavor where the crew faced a plethora of difficulties including a tropical storm, a hurricane, a shipboard electrical fire, a practically inoperative galley, lack of onboard securing equipment, and intermittent flooding that caused wet, perilous passageways throughout the Vessel.

33. Despite these difficulties and as a direct result of the knowledge and experience of Capt. Mann and his crew, the Vessel arrived safely in Panama to meet the Thompsons who remained aboard only for the duration of the transit through the Panama Canal.

34. On July 23, 2023, the Vessel arrived in Savannah, Georgia.

35. The day following the Vessel's arrival, while Capt. Mann was away arranging return transportation, Dale Thompson arrived at the Vessel and handed one of the crewmembers two envelopes.

36. The crewmember noted that Dale Thompson appeared agitated and in a hurry and departed before Capt. Mann returned to the Vessel.

5

37. On July 24, 2023, Capt. Mann and three of his crewmembers departed from Savannah in a rental vehicle for a three-day return trip.

38. Upon opening the first envelope, Capt. Mann discovered that Defendants had only made a partial payment of $62,200.00. Capt. Mann did not agree to accept this amount as a full payment but did apply the partial payment to the outstanding wages.

39. The second envelope contained a second check for $9,000.00 made out to Timothy McCarthy, the additional crewmember.

40. Capt. Mann returned the $9,000.00 check to Dale Thompson, because Capt. Mann hired McCarthy and paid him directly. This was later acknowledged by Dale Thompson.

41. Capt. Mann arrived back in San Diego, the port of departure, on July 29, 2023.

42. However, Capt. Mann only billed Defendants through July 26, 2023, allowing three days to travel approximately 2,400 miles.

43. On August 2, 2023, Capt. Mann, via text message to Dale Thompson, demanded he pay the remaining balance of seaman's wages and disputed that the wages had been "Paid in Full"[1] because a balance of unpaid wages of approximately $47,325.47 remained, which was discounted, provided that, payment was promptly received.

44. Because full payment was not promptly received, Capt. Mann informed Dale Thompson that the discounts would be removed unless he paid the discounted balance immediately.

45. Defendants refused to pay the outstanding wages.

46. To date, Defendants still have refused to pay the outstanding seaman's wages, leaving a balance of approximately $78,825.47 without the discounts.

---

[1] The phrase "Paid in Full" was handwritten on in the invoice created and delivered to Plaintiff by Dale Thompson. Capt. Mann disputes the accuracy of this statement.

6

47. Capt. Mann has been authorized by the crewmembers to bring a claim for seaman's wages on their behalf.

## FIRST CAUSE OF ACTION
(Nonpayment of Seaman's Wages)

48. Plaintiff restates the above allegations as if set forth herein verbatim.

49. Defendants hired Capt. Mann and crew to prepare and deliver the Vessel from San Diego, California, to Savannah, Georgia.

50. The voyage began on June 15, 2023 and ended on July 26, 2023.

51. Defendants failed to pay all seaman's wages that had accrued as a result of the seaman's work performed as described herein.

52. On August 2, 2023, Capt. Mann demanded in writing that Defendants pay the outstanding wages balance.

53. Defendants failed to obtain signed written shipping articles for the intercoastal voyage involving a Vessel of 73 gross tons.

54. Defendants failed to pay Plaintiff the highest wage that was paid for a similar voyage within the three months before the time of engagement at the port of departure.

55. Defendants failed to pay Plaintiff for approximately 46 days of wages at a rate of $1,500 per day.

56. Defendants failed to pay Plaintiff $9,000.00 for Timothy McCarthy's wages.

57. Defendants failed to pay Plaintiff at the proper rate.

58. Defendants failed to pay all wages due within two days from when Capt. Mann demanded full payment.

59. Defendants' failure to pay all wages was without sufficient cause.

60. Defendants knowingly and improperly delayed payment of Plaintiff's wages.

7

61. Defendants failed to timely pay Plaintiff's wages.

62. Defendants' conduct was in reckless disregard of Plaintiff's rights.

63. Plaintiff is entitled to two days wages for each day payment was delayed.

64. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages in an amount to be determined upon the trial of this action.

SECOND CAUSE OF ACTION
(Breach of Maritime Contract)

65. Plaintiff restates the above allegations as if set forth herein verbatim.

66. Defendants engaged Capt. Mann and crew to prepare and deliver the Vessel from San Diego, California to Savannah, Georgia.

67. Defendants failed to pay Capt. Mann and three crewmembers wages at a rate of $1,500.00 per day

68. Defendants failed to pay Capt. Mann 26 days of wages at a rate of $250.00 per day for Timothy McCarthy.

69. Plaintiff fully performed under the agreement.

70. Defendants failed to perform their duties under the agreement and materially breached the agreement in the following ways:

    a. In failing to pay promptly pay all outstanding seaman's wages;

    b. In failing to fully pay for all wages it had engaged Plaintiff to perform; and

    c. In other material respects that may be proven at the trial of this matter.

71. Defendants also breached the implied covenant of good faith and fair dealing by materially misrepresenting their intentions to pay for all services performed.

72. As a direct and proximate result of Defendants' said material breaches, Plaintiff has incurred damages as set forth herein and as may be proven at the trial of this matter.

## FOR A THIRD CAUSE OF ACTION
(Maritime Lien Foreclosure)

73. Plaintiff restates the above allegations as if set forth herein verbatim.

74. Capt. Mann and his crew performed seaman's work in service of the Vessel.

75. Capt. Mann demanded full payment in writing on August 2, 2023.

76. Defendants have failed and refused to pay all outstanding wages to Capt. Mann.

77. Plaintiff performed seaman's work giving rise to a maritime lien of the highest priority against the Defendant Vessel for the full amount of wages, penalty wages, punitive damages, prejudgment interest, attorneys' fees and costs, and additional amounts to be determined by this Court.

## FOR A FOURTH CAUSE OF ACTION
(Quantum Meruit / Unjust Enrichment)

78. Plaintiff restates the above allegations as if set forth herein verbatim.

79. Defendants failed to obtain signed shipping articles, and therefore, Plaintiff and crewmembers are not bound by them.

80. Plaintiff and crewmembers conferred benefits to Defendants including, without limitation, preparing and delivering the Vessel.

81. Defendants retained said benefits under circumstances that make it inequitable for them to retain those benefits because seaman's work performed by Plaintiff and crewmembers was not done *gratis*.

82. As set forth herein, Defendants have been unjustly enriched at the expense of Plaintiff and crewmembers.

83. In equity, Plaintiff and crewmembers are entitled to an award of damages for the benefits conferred to Defendants.

PRAYER FOR RELIEF

WHEREFORE, by reason of the foregoing, Plaintiff prays that summons issue citing Defendants to appear and answer the aforesaid matters, that process in due form of law according to the practice of this Court in Admiralty and Maritime matters issue against Defendant Vessel, her engines, etc., that Defendant Vessel be seized and sold to pay any judgment herein, that judgment be rendered for Plaintiff and against Defendants, jointly and severally, that all *in custodia legis* expenses be paid, and that Plaintiff be fully compensated and awarded compensatory, special, and general damages, penalty wages at the highest wage that was paid for a similar voyage within the three months before the time of engagement at the port or place of departure, prejudgment interest, attorneys fees, costs of this action, and that this Court award any other amount and grant any other or further relief that may be proved or that justice may require.

[SIGNATURE PAGE FOLLOWING]

        RESPECTFULLY SUBMITTED BY:

        COOPER & BILBREY, P.C.

            By: s/ *Albert G. Bilbrey, Jr.*
            ALBERT GLEN BILBREY, JR., ESQUIRE
                Federal Court ID 12938
                South Carolina Bar 103799
                aj@jhcooper.com
            JOHN HUGHES COOPER, ESQUIRE
                Federal Court ID 298
                South Carolina Bar 1387
                State Bar of Georgia 185986
                shiplaw@jhcooper.com
            JOHN TOWNSEND COOPER, ESQUIRE
                Federal Court ID 10172
                South Carolina Bar 76087
                jtc@jhcooper.com
            PO BOX 22513
            Charleston, SC 29413
            O 843-883-9099; F 843-883-9335

        *Attorneys for Plaintiff,*
        *Stephen D. Mann*

February 21, 2024
Charleston, South Carolina

## VERIFICATION

PERSONALLY APPEARED Captain Stephen D. Mann, who, under penalty of perjury, deposes, and says:

a)  My name is Stephen D. Mann and I conduct business under the name of Capt. Mann's Yacht Services.

b)  I am over 18, of sound mind, a resident of the State of California, and a seaman.

c)  I have read the foregoing PLAINTIFF'S VERIFIED COMPLAINT and know the contents thereof and the same are true and correct to the best of my knowledge, except as to matters therein stated to be on information and belief, and as to those matters, I believe them to be true.

d)  The sources of my information and the grounds of my belief are my personal knowledge and documents in my possession.

e)  Pursuant to 28 U.S.C. § 1746, I certify, under penalty of perjury, that the foregoing is true and correct.

_____          February 21, 2024
Captain Stephen D. Mann